303 N.W.2d 506 (1981)
208 Neb. 350
James HOLLINGSWORTH, Appellant,
v.
BOARD OF EDUCATION OF the SCHOOL DISTRICT OF ALLIANCE, Appellee.
No. 43210.
Supreme Court of Nebraska.
March 20, 1981.
*508 Holtorf, Kovarik, Nuttleman & Ellison, P. C., Gering, for appellant.
Reddish, Curtiss, Moravek & Danehey, Alliance, for appellee.
Heard before KRIVOSHA, C. J., and McCOWN, WHITE and HASTINGS, JJ., and MURPHY, District Judge.
MURPHY, District Judge.
This is an error proceeding to challenge the action of the defendant, Board of Education of the School District of Alliance, Nebraska, terminating the plaintiff's teaching contract. The District Court affirmed the action of the Board of Education, finding that there was sufficient evidence to justify termination for just cause insofar as the plaintiff was unable to control his classroom and to handle student misbehavior and the plaintiff's personal hygiene adversely affected his performance as a teacher. From this decision of the District Court the plaintiff has appealed.
The plaintiff, James Hollingsworth, was employed by the school board for the school years 1976-77 and 1977-78 as a Life Science teacher for the seventh grade in the Alliance Middle School. On April 28, 1978, the plaintiff entered into a contract with the school board as a tenured teacher for the 1978-79 school year. As a tenured teacher, Mr. Hollingsworth continued to teach Life Science to 110 seventh-grade students in the Middle School until May of 1979.
An error proceeding has for its purpose the removal of the record from an inferior to a superior tribunal to determine if the judgment or final order entered is in accordance with law. Dovel v. School Dist. No. 23, 166 Neb. 548, 90 N.W.2d 58 (1958); Sanders v. Board of Education, 200 Neb. 282, 263 N.W.2d 461 (1978). Therefore, the District Court and this court, on appeal, must determine if the evidence presented at the hearing before the school board on May 1, 1979, is sufficient, as a matter of law, to support the determination of the school board.
As stated in Sanders v. Board of Education, supra at 289, 263 N.W.2d at 465: "There are few, if any, objective criteria for evaluating teacher performance or for determining what constitutes just cause for terminating teaching contracts of tenured teachers. Each case must, therefore, be assessed on its own facts."
It follows that, in order to resolve the crucial issue as to whether there was sufficient evidence, as a matter of law, to constitute just cause for the termination of Mr. Hollingsworth's contract, a detailed review of the record before the school board is essential.
That record demonstrates Mr. Hollingsworth's academic background. He received a bachelor of science in education degree from Marion College and a master's in education degree from Ball State University. His academic qualifications are not in dispute.
At the school board hearing of May 1, 1979, testimony was adduced from seven witnesses, including Mr. Hollingsworth. Fifty-three exhibits were offered and received in evidence.
The first witness, Larry Grosshans, testified that he was principal of Alliance Middle School consisting of grades six, seven, and eight. As principal he was responsible for evaluating all teachers in the Middle School. On April 3, 1979, Mr. Grosshans recommended that Mr. Hollingsworth's teaching contract not be renewed because his performance was unsatisfactory in the following respects: "1. He has left his classroom unattended while students were present; 2. He has been unable to handle *509 student misbehavior; 3. He has been unable to control his classroom; 4. He lacks rapport with students; 5. He lacks rapport with parents; 6. He does not have a good relationship with fellow staff members; 8. [sic] His personal appearance, mouth and body odor, has [sic] interfered with his performance; 9. He has not been punctual for classes." Mr. Grosshans recommended the termination of Mr. Hollingsworth's contract because of "(1) incompetency; (2) neglect of duty; (3) unprofessional conduct and (4) other conduct which interferes substantially with the continued performance of duties."
Mr. Grosshans stated that he based his conclusion that Mr. Hollingsworth failed to maintain control of his classes on reports from students and parents in regard to discipline problems, personal observation in visiting the classroom, and a survey of 50 students.
Each of Mr. Grosshans' visits to the classroom were verified by a written visitation and observation report of Mr. Grosshans. These records show that Mr. Grosshans first visited Mr. Hollingsworth's classroom on September 20, 1976, when Mr. Hollingsworth first commenced his teaching career at the Alliance Middle School. Mr. Grosshans reported the following: "The lesson was considered meaningful and relevant. The arrangement and organization of the room was good considering its limitations. Collection of materials for student use was excellent. Student comments included, `fun class,' `interesting,' `knowledgeable teacher,' `easy,' etc. Overall, it was a good class but suggest you note the following. Several students were wasting time on occasion and `messing around.' Suggest you `clamp' down on these students and maybe talk to entire class about their talking. Too many were talking when you did." Classroom visits were made on October 21, 1976, and November 22, 1976. Written reports of these visits show no criticism by Mr. Grosshans.
On January 7, 1977, Mr. Grosshans compiled a "Teacher Appraisal Instrument" in regard to Mr. Hollingsworth. Out of 37 qualities listed, Mr. Hollingsworth received 36 plus ratings and one minus rating. This report contains the only mention of Mr. Hollingsworth's having an odor problem. In the same report Mr. Grosshans recommends renewal of his contract for the 1977-78 school year.
The next classroom visit by Mr. Grosshans took place on September 16, 1977, the beginning of Mr. Hollingsworth's second year as a teacher at Alliance. Mr. Grosshans commended Mr. Hollingsworth for good classroom control and management, and concluded by stating: "Jimthis was one of the better examples of teaching I have seen."
Visitations to the Hollingsworth classroom on October 21, 1977; November 30, 1977; January 13, 1978; February 6, 1978; February 10, 1978; and February 16, 1978, were uniformly praiseworthy of Mr. Hollingsworth's teaching ability and classroom control.
Mr. Hollingsworth's first year as a tenured teacher commenced in September 1978. Classroom visits were made by Mr. Grosshans on September 15, 1978, and October 24, 1978. His written reports of these visits contained no criticisms.
On November 15, 1978, 2½ months before asking for his resignation, Mr. Grosshans made another visit to Mr. Hollingsworth's classroom and wrote in his report: "Mr. Hollingsworth exhibited good poise and confidence through today's lesson. Planning and organization were good. Mr. Hollingsworth also maintained good control of the class. When he asked for attention, he got itwhen he asked for quiet, he got it, etc."
The final visitation report which was received in evidence pertains to a visit on December 20, 1978. Again, the report was generally praiseworthy, but a suggestion was made that students sharpen pencils before class begins.
On January 31, 1979, Mr. Grosshans asked for Mr. Hollingsworth's resignation. The record is silent as to any events occurring between the last classroom visit on December 20, 1978, which was satisfactory, and the request for resignation 40 days later.
*510 On February 12, 1979, Mr. Grosshans met with the school board in executive session, at which time the school board was informed of the request for Mr. Hollingsworth's resignation and his failure to comply with that request.
Mr. Grosshans testified that school records demonstrate that Mr. Hollingsworth's student referrals to the assistant principal for disciplinary reasons were excessive when compared to referrals by other teachers. According to Derald Morgan, the assistant principal who compiled these records, they show 27 student referrals by Mr. Hollingsworth. However, he admitted on cross-examination that 22 of the total referrals came after February 6, 1979. In other words, before he was asked to resign, Mr. Hollingsworth had a total of 5 referrals for discipline.
On March 26, 1979, 1 week before he recommended the termination of the Hollingsworth contract to the school board, Mr. Grosshans conducted a survey of 50 students in regard to their relationship with Mr. Hollingsworth. On cross-examination Mr. Grosshans admitted that, despite his efforts to conceal the purpose of his survey, the students could have been aware of its purpose. It was on the basis of this survey and his class visitations that Mr. Grosshans concluded that Mr. Hollingsworth lacked rapport with the students. None of the students testified.
Mr. Grosshans testified that on one occasion he discovered Mr. Hollingsworth's class unattended. Again, on cross-examination he admitted that he later learned that Mr. Hollingsworth had received a severe shock from electrical machinery and was recovering in the faculty lounge.
Mr. Grosshans admitted that Mr. Hollingsworth put in longer hours than any other teacher and often volunteered for additional work, such as the compilation of the school yearbook.
The basis of Mr. Grosshans' evaluation of Mr. Hollingsworth is illustrated by a consideration of his answer to the following question by the school board's attorney: "Q. In making your evaluation, Mr. Grosshans, did you consider Mr. Hollingsworth's performance in a vacuum or did you take into consideration what the other teachers are accomplishing in the same school with the same teachers or the same students? A. I took into consideration the performance level criteria which was established in the Teacher Manual and the areas of teacher performance which are expected. My evaluation is not based on a comparison of Mr. Hollingsworth's performance with other staff members' performance."
The staff manual referred to in Mr. Grosshans' above answer was received in evidence. This manual contains the rules and regulations for the orderly and efficient operation of the school on an everyday basis. There are no standards or criteria by which to measure or gauge the performance of an individual teacher.
Mr. Derald Morgan was the next witness called. He testified that the present year was his first as assistant principal of the Alliance Middle School. One of his duties as assistant principal was student control and discipline. Mr. Morgan related that he had no basis for comparing this year's discipline referrals with previous years. He stated that he did not know the total number of referrals for the present year. On cross-examination he admitted that 81 percent of all Mr. Hollingsworth's discipline referrals came after February 6, 1979. He also admitted that the events which occurred about that time (the request for Mr. Hollingsworth's resignation on January 31, 1979) "may have some bearing on what's happened in the classroom."
The athletic director, Robert L. Morris, next took the stand. Mr. Morris gave his opinion that Mr. Hollingsworth lacked rapport with his fellow coaches and the student athletes. In the fall of 1978 Mr. Hollingsworth coached cross-country for the boys and girls. To illustrate his point, Mr. Morris reported that two girls on Mr. Hollingsworth's team put sugar in Mr. Hollingsworth's gas tank, and on another occasion the windows of his car were soaped.
*511 On cross-examination Mr. Morris admitted that, in his evaluation report of Mr. Hollingsworth as a coach, he rated Hollingsworth average or above average in 13 categories and below average in only two. In this report dated October 30, 1978, Mr. Morris had the following comments: "Coach Hollingsworth is a good organizer. He also pursues different avenues in an attempt to motivate athletes. His work is well done."
William E. Stout, a teacher of Earth Science at the Middle School, testified that he was the coach of cross-country prior to Mr. Hollingsworth's appointment to that position. He stated that his relationship with Mr. Hollingsworth deteriorated when Mr. Hollingsworth wrote a letter to Mr. Grosshans complaining about Mr. Stout's interference with his duties as coach. He also testified that he noticed a problem about breath and body odors with respect to Mr. Hollingsworth. The record is silent as to when, how often, or whether he noticed a worsening or improvement of this situation. Other than Mr. Grosshans, Mr. Stout is the only witness who testified from personal observation as to this problem.
Shirley Mae Schlenker, a physical education teacher, testified that her office was next door to Mr. Hollingsworth's classroom, and on many occasions she had observed students in the hallways. However, she admitted that this was not unusual for any teacher. She reported a locker room comment about Mr. Hollingsworth's personal hygiene by an unnamed female student. She also observed that many of her fellow coaches considered Mr. Hollingsworth to be distant.
The final witness for the school board was Leonard R. Hartman, an eighth-grade mathematics teacher. Mr. Hartman stated that Mr. Hollingsworth's relationship to other faculty members was distant but that in the last year Mr. Hollingsworth had "put more effort into being accepted by the staff." Mr. Hartman had no personal knowledge of any hygiene problems but noted that students had complained. He was unaware of any discipline problems encountered by Mr. Hollingsworth.
At this point the attorney for the school board rested, and Mr. Hollingsworth testified on his own behalf. He described his brief but successful career as a cross-country coach. Complimentary letters from students were offered and received in evidence. Mr. Hollingsworth described the dental problems which he had when he first came to Alliance. To correct this problem he incurred dental expenses in the amount of $1,500. He stated that perhaps complaints about body odor were because the temperature in his classroom was often 80 degrees and the nature of his subject required him to move around frequently. He explained that the coaches who are also teachers held Wednesday night poker parties at which he consistently lost because he did not play cards in college. He stated that he "didn't fit in with the drinking, either." Therefore, he no longer attended the poker parties. He stated that he had made an effort to be accepted by the faculty. He further testified that he had worked the entire summer of 1978 in an effort to devise a teaching program that would accommodate the varying learning abilities of his students. Finally, he indicated that he would be happy to give up his cross-country coaching position and devote his every effort to his Life Science teaching if the school board would permit him. On cross-examination Mr. Hollingsworth testified that, when he was having a successful cross-country season, he was full of confidence in the classroom. He admitted that his confidence was "dented" when the principal asked him to resign.
On May 7, 1979, the school board voted to terminate Mr. Hollingsworth's teaching contract for just cause. The school board made the following findings of fact: "1) You frequently left your classroom unattended while students were present. 2) You have been unable to control your classroom. 3) You have been unable to handle student misbehavior. 4) You lack rapport with students. 5) You do not have a good relationship with fellow staff members. 6) Your personal appearance (odor) has interfered with your performance." The school *512 board then found there existed just cause to terminate the contract on the following grounds: "1) incompetence; 2) neglect of duty; 3) unprofessional conduct; and 4) other conduct which interferes substantially with the continued performance of duties."
In an error proceeding the evidence at the school board hearing was reviewed by the District Court where the action of the school board was affirmed.
Neb.Rev.Stat. § 79-1254 (Reissue 1976) provides that the contract of a tenured teacher cannot be terminated except for just cause. As used in this section, the term just cause shall mean incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, or other conduct which interferes substantially with the continued performance of his duties.
The District Court, in its journal entry of October 5, 1979, concluded that the school board's finding of incompetence and other conduct which interfered substantially with Mr. Hollingsworth's continued performance of duties was warranted because: (a) Plaintiff was unable to control his classroom and to handle student misbehavior; and (b) Plaintiff's personal hygiene adversely affected his performance as a teacher.
The question before this court is whether the record is sufficient, as a matter of law, to establish just cause. We find that it is not.
In building its case against Mr. Hollingsworth, the school board has fashioned a house of straw which cannot stand in the fresh breeze of careful analysis. Again and again the testimony of Mr. Grosshans is contradicted by his written observations in regard to Mr. Hollingsworth's ability as a teacher, his classroom control, and his discipline for a period extending over 2½ years. Mr. Hollingsworth's referrals to the assistant principal for disciplinary reasons were few in number until the request for his resignation and the transmittal of that information to the school board immediately thereafter. Although the record is silent as to whether the student body gained knowledge of this request for his resignation, their behavior would indicate that many students were aware that their teacher's position with the administration was not what it was when he was granted tenure. It was not until a week before his recommendation of termination to the school board that Mr. Grosshans undertook his survey of 50 students. Knowledge of Mr. Hollingsworth's status with the administration and peer pressure are factors to be considered in their responses. Although strict adherence to the rules of evidence cannot be demanded or even expected at a hearing before a school board, when a teacher's career hangs in the balance, the basic principles of due process demand that hearsay statements of students be given little, if any, weight. Certainly this is true with respect to the hearsay comment of an unidentified female student to her physical education teacher.
Only two witnesses testified that they personally detected body or breath odors when coming in contact with Mr. Hollingsworth. Again, the record is silent as to when, where, and for how long these odors were detected. The written evidence of this problem is in a reference on January 7, 1977, during a classroom visit by Mr. Grosshans. On his many visits after that date, there is no further mention of an odor problem. Mr. Hollingsworth testified that he believed the problem to be solved after extensive dental work, which was performed shortly after his arrival in Alliance. In any event, a man's profession and his status as a tenured teacher should not depend on the olfactory sensitivity of only two members of a teaching staff. At the very least he should be given an opportunity to take whatever action is necessary to avoid giving offense in the future.
Furthermore, it would appear that Mr. Grosshans' evaluation of Mr. Hollingsworth is suspect because, in his own words, he failed to compare Mr. Hollingsworth's performance with other staff members' performance. Incompetency or neglect of duty are not measured in a vacuum nor against a standard of perfection, but, instead, must *513 be measured against the standard required of others performing the same or similar duties. Sanders v. Board of Education, 200 Neb. 282, 263 N.W.2d 461 (1978).
Finally, a careful review of the entire record would indicate that for 2½ years Mr. Hollingsworth was a competent and industrious teacher. There is nothing in the record to reveal what prompted the decision to ask for his resignation on January 31, 1979. It does appear that, from that date forward, the administration commenced a systematic and diligent search for evidence which would justify the decision which had already been reached. That search has failed.
The judgment of the District Court in affirming the action of the school board is in error and is therefore reversed, with directions that the school board's action be vacated and Mr. Hollingsworth restored to his status as a tenured teacher with full compensation from the date of his termination.
REVERSED WITH DIRECTIONS.