JOYCE M. ESHOM, APPELLANT, V. BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 54, THAYER AND NUCKOLLS COUNTIES, NEBRASKA, A POLITICAL SUBDIVISON OF THE STATE OF NEBRASKA, APPELLEE.

364 N.W.2d 7

Filed March 8, 1985.   No. 83-972.

Lyle Joseph Koenig of Germer, Koenig, Murray, Johnson & Daley, for appellant.

John F. Recknor of Barlow, Johnson, DeMars & Flodman, for appellee.

KRIVOSHA, C.J., HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

CAPORALE, J.

Joyce M. Eshom, appellant, filed a proceeding in error to the district court from the decision of the appellee, board of education of school district No. 54 of Thayer and Nuckolls Counties, also known as the Chester-Hubbell-Byron district, terminating her employment as a teacher. The district court affirmed the action of the board. Eshom argues that she was denied due process and that the evidence is not sufficient to support the board's action. We affirm.

Eshom had been employed as a teacher by school district No. 68 of Thayer and Nuckolls Counties, also known as the Byron district, for 7 years prior to her employment with the Chester-Hubbell-Byron district. The latter district came into being as the result of a 1982 merger of the Byron district with school district No. 54 of Thayer County, then also known as the Chester-Hubbell district. In the Byron district Eshom was a tenured teacher who taught home economics, typing, and bookkeeping. She holds a baccalaureate degree in vocational homemaking from Chadron State College. She has also earned 18 graduate hours in special education, business education, and education. Eshom's only endorsed area of teaching is vocational home economics.

Following the merger, Eshom was retained as a tenured teacher by the merged Chester-Hubbell-Byron district. She signed an employment contract for the 1982-83 school year which required that she teach "classes as assigned." Eshom was assigned to teach one home economics class, three mathematics

classes, and one English class. She had not taught mathematics or English before that time.

On September 21, 1982, Eshom was evaluated by Glenn Davenport, the principal of the Chester-Hubbell-Byron district. Of 30 areas included in the evaluation, which could be rated satisfactory, marginal, or unsatisfactory, Eshom scored "satisfactory" in 28 areas and "marginal" in 2—maintenance of order and providing a learning atmosphere. The evaluation noted specifically that Eshom needed improvement in controlling her seventh grade mathematics and English classes.

On March 14, 1983, Eshom was evaluated again by Davenport. This time she was rated as marginal in 13 areas and unsatisfactory in 2 areas. The evaluation recommended "non-renewal of Mrs. Eshom's contract" unless she made significant progress in the ability to control her classes, in changing the shrillness of her voice, in using proper English and grammar, in controlling her emotionality when correcting students, and in her ability to use demonstrative instructional materials. He considered her to lack the teaching skills required to be more than a mediocre teacher. Davenport also noted, however, that Eshom was a loyal, conscientious, and pleasant employee.

Both the September and March evaluations were given to and reviewed with Eshom.

On April 12, 1983, the board notified Eshom that it had decided to consider amending or terminating her contract and detailed in that notice the deficiencies as evaluated by Davenport. Eshom then requested a hearing before the board of education, and asked that she be provided with a list of the witnesses to be called at the hearing and with the documents which were to be introduced. The board complied with these requests by listing the two witnesses who would appear and by giving her copies of the exhibits to be introduced at the hearing. Following the hearing, the board, by a 5-to-4 vote, decided to terminate Eshom's contract of employment.

Eshom's first complaint rests upon Neb. Rev. Stat. § 79-12,115 (Cum. Supp. 1984), which requires, among other things, that upon request the board provide the teacher the names of witnesses to be called and allow the teacher an

opportunity to examine any documents to be presented at the hearing.

During his testimony, Davenport referred to some informal evaluations which he had made of Eshom. She claims that since these informal evaluations had not been given to her prior to the hearing, his reference to them violated her due process rights as set forth in § 79-12,115. However, the record establishes Davenport did no more than mention that he had made informal evaluations and testified that the formal observations upon which he based his recommendation were in agreement with the observations he made on the informal occasions. In fact, the record reveals that these informal evaluations were gleaned from Davenport's short visits to various classrooms, and were not necessarily even in written form.

As indicated in *Benton v. Board of Ed. of Sch. Dist. No. 17, ante* p. 134, 361 N.W.2d 515 (1985), in the contested termination of a tenured teacher, minimal procedural due process requires that the teacher (1) be advised of the cause or causes for the termination in sufficient detail to fairly enable him or her to prepare a defense, (2) be advised of the names and the nature of the testimony of witnesses who are to testify against the teacher, and (3) be accorded a timely and meaningful opportunity to be heard in his or her own defense, and (4) that the hearing be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.

The record establishes that the board fully complied with the above requirements. Consequently, the record does not sustain Eshom's first complaint.

Before we begin our analyses to determine whether the evidence presented at the hearing is sufficient to support the board's decision to terminate Eshom's contract, we must address the standard of review to be used.

We first note that as a proceeding in error, its purpose is to remove the record from an inferior to a superior tribunal so that the latter tribunal may determine if the judgment or final order of the inferior tribunal is in accordance with law. *Hollingsworth v. Board of Education*, 208 Neb. 350, 303 N.W.2d 506 (1981). We have articulated the standard of

reviewing teacher termination cases so as to make that determination in two different ways. We have often said that this court, on appeal, must determine if the evidence presented at the hearing before the school board is sufficient as a matter of law to support the board's decision. *Schulz v. Board of Education*, 210 Neb. 513, 315 N.W.2d 633 (1982); *Hollingsworth v. Board of Education, supra*; *Davis v. Board of Education*, 203 Neb. 1, 277 N.W.2d 414 (1979); *Sanders v. Board of Education*, 200 Neb. 282, 263 N.W.2d 461 (1978). We have also said that the order of an administrative body must be affirmed if it acted within its jurisdiction and there is some competent evidence to sustain its findings. *Kennedy v. Board of Education*, 210 Neb. 274, 314 N.W.2d 14 (1981).

Taken together, these statements mean that we review the record in teacher termination cases to determine whether there is sufficient evidence as a matter of law to support the board's decision. It is, then, the same standard used in determining whether the decision of an administrative agency is supported by substantial evidence. As recently described in *Beatrice Manor v. Department of Health, ante* p. 141, 362 N.W.2d 45 (1985), in order to support an agency decision, the record must be such that on the basis of all the testimony and exhibits, the agency could fairly and reasonably find the facts as it did. Stated another way, the evidence is "substantial" or "sufficient as a matter of law," or constitutes "some competent evidence," if a judge could not, were the trial to a jury, direct a verdict; it is something less than the weight of the evidence and can be such as to permit the drawing of two inconsistent conclusions.

The board concluded Eshom did not maintain the required and standard degree of control of her class, lacked teaching skills in that she did not use her voice properly, demonstrated emotionality in correcting students, used incorrect and substandard English and grammar, and used an inadequate variety of materials and individualized instruction. From these findings the board concluded that Eshom's contract should be terminated.

Neb. Rev. Stat. § 79-12,112 (Cum. Supp. 1984) provides that the contract of a permanent certificated employee may be terminated for "just cause," which, as defined in Neb. Rev.

Stat. § 79-12,107(4) (Cum. Supp. 1984), includes "incompetency." "Incompetency" is so defined as to include demonstrated deficiencies or shortcomings in teaching skills.

Eshom presents two arguments to support her position that the evidence is not sufficient as a matter of law to support the board's decision. She first contends that it was unfair to evaluate her on the basis of her performance in teaching classes which she had never taught before and which were outside her area of expertise. Davenport admitted that he based his evaluations on observations of Eshom's teaching in her mathematics and English classes and that he did not conduct a formal evaluation of Eshom in her home economics class. He explained that this was because "those were the classes in which she was having the difficulty, and I was concerned about how the instruction was being carried out, so I gave it more attention."

Davenport further testified that several other teachers were teaching outside their certificated areas, although no other teachers were required to teach four out of five classes outside their certificated areas. However, while Davenport admitted that teaching outside her area may have affected Eshom's confidence, he stated that the other teachers who were teaching outside their areas "[did so] with confidence and control and competence" and that "[w]e're not talking about so much as a matter of degree, I don't think, counselor, as we are talking about a basic, a basic ability to communicate to and control kids under any situation."

Davenport also reported that Eshom taught one fewer class than the majority of the other faculty members because "we felt that [she was] plowing new ground, as it were, and needed some more time to work on those classes." Further, Eshom admitted she was aware when she signed her contract that, in the merger situation, there might be some problem getting every teacher into his or her endorsed area of teaching.

There is nothing in the record which tells us whether the State Board of Education or the Chester-Hubbell-Byron district adopted rules or regulations pertaining to teaching outside one's endorsed area. We are therefore unable to determine whether Eshom's assignment to teach four classes outside her

endorsed area violates any rule or regulation. We have said many times that evidence which does not appear in the record cannot be considered by this court on appeal. *State v. Austin, ante* p. 420, 363 N.W.2d 397 (1985); *Mace v. Mace,* 215 Neb. 640, 341 N.W.2d 307 (1983); *Weeks v. State Board of Education,* 204 Neb. 659, 284 N.W.2d 843 (1979). While teaching outside one's area might have an effect on one's confidence about teaching that subject, the record before us does not establish that that fact was the cause of Eshom's unsatisfactory evaluations and performance. In fact, Davenport testified that Eshom lacked the basic teaching skills required to teach children, regardless of the subject area she taught. This, along with the circumstance that other teachers in the school were successfully teaching in areas with which they were not previously familiar, indicates that the evaluations of her teaching in mathematics and English classes were not so without basis as to invalidate Davenport's appraisals of her. Eshom's contention in that regard is without merit.

Eshom also contends that the assignments to unendorsed subject areas were simply a ploy aimed at achieving a reduction in force. In other words, Eshom claims the board wanted to eliminate her position with the school. However, the record reflects that the parties agreed that this case does not present a reduction in force termination. Eshom cannot take one factual position at one stage of a proceeding and then come to this court and argue an altogether different factual position.

Eshom's second argument concerning the sufficiency of the evidence is that her evaluations were made in a vacuum.

The record shows that the two evaluations made by Davenport used the same factors as were used in evaluating all of the secondary teachers, all of whom were rated during both the first and second semesters of the 1982-83 school year. Of the 10 secondary teachers evaluated, Eshom and 1 other teacher received marginal or unsatisfactory ratings for the year. No contract was given that other teacher for the following year.

The evaluation form used was explained in an item-by-item analysis by Davenport. The areas in which Davenport rated Eshom unsatisfactory were detailed, and Davenport related specific examples to support his judgment. He then compared

Eshom's performance with other secondary teachers' performances. In each of the areas which Eshom was judged to be unsatisfactory or marginal, Davenport testified that Eshom was not up to the level of the other teachers or was not up to the level that he expected.

Davenport testified that he based his observations on his 26 years of experience.

> A. The standard to which I am holding Mrs. Eshom is to that level of performance in my mind that I have arrived at through my years of experience as a classroom teacher and as administrator and by the professional training that I have had through the years and in which I continuously work on.
>
> . . . .
>
> I work for the Chester-Hubbell-Byron School District. This is my fourth year here.
>
> In that time I've had opportunity to — by my contractural [sic] duties, to observe, watch the teachers in this building do — perform as far as their level and as I think about this staff that we have and the level at which I perceive their performance, and Mrs. Eshom does not come up to that standard, to that level, so perhaps more specifically to your question, it is a standard of the teachers in this building.

Davenport described Eshom as having made a "genuine effort" to improve her performance, but nonetheless concluded that she would "not be able to arrive at the level of performance that we want."

Davenport had no opportunity to evaluate Eshom prior to the 1982-83 school year, and there were no prior evaluations from other schools in her file.

The superintendent of the district, Kenneth Mahlin, testified that he developed the evaluation form used in consultation with two of his professors as part of a project for university classes he took in educational administration.

Mahlin testified that he had not observed Eshom's teaching performance in the classroom, but had observed her in interactions with students on two different occasions. On those occasions Eshom had difficulty controlling the students.

Mahlin also stated that he thought the incidents were "significant," and he did not observe that type of problem as he walked through the other hallways of the school.

Eshom called three witnesses on her behalf. A fellow teacher testified that Eshom sought and received help from him and that he reviewed the mathematics tests Eshom gave to her students and found them satisfactory.

Two parents, a husband and wife, testified that their child was in Eshom's class and that the child liked Eshom as a teacher. Neither parent had observed Eshom in her classroom.

Eshom testified on her own behalf about helping a student solve a behavioral problem by working with Mahlin and the student on the student's problem.

In *Hollingsworth v. Board of Education*, 208 Neb. 350, 360-61, 303 N.W.2d 506, 512-13 (1981), we said: "Incompetency or neglect of duty are not measured in a vacuum nor against a standard of perfection, but, instead, must be measured against the standard required of others performing the same or similar duties." In *Hollingsworth* the principal's evaluation of the plaintiff teacher was suspect because the principal failed to compare the plaintiff with other staff members' performances.

Further, in *Schulz v. Board of Education*, 210 Neb. 513, 519, 315 N.W.2d 633, 637 (1982), we stated:

> "The critical issue here is what conduct is sufficient to constitute just cause for the termination of the contract of a tenured teacher under current statutory requirements. There are few, if any, objective criteria for evaluating teacher performance or for determining what constitutes just cause for terminating teaching contracts of tenured teachers. Each case must, therefore, be assessed on its own facts. . . ."

In *Schulz* we found that there was insufficient evidence to support a teacher's termination where the teacher received above average ratings and the record was silent as to the performance of any other teachers in the school.

In *Davis v. Board of Education*, 203 Neb. 1, 277 N.W.2d 414 (1979), we upheld a board of education determination that a teacher should be terminated. The principal in that case

testified that, based on his 10 years in the system and personal observations in the teacher's classroom, he believed termination was called for. The superintendent also testified from personal observations in the class, recommending termination. Other witnesses favored retention. We said that

> the testimony of the expert witnesses charged with the duty of evaluating the performance of the teacher was that her performance did not meet the appropriate standard. They recommended that her employment be terminated and the evidence, including the expert testimony, as a matter of law, was sufficient to support the action of the board in terminating her employment. The language in Sanders with reference to a standard of performance should not be interpreted to mean that in every hearing on termination before a board of education there must first be expert testimony establishing the appropriate and acceptable standard of performance before a board may consider whether particular conduct falls below that standard.
>
> In an error proceeding conflicting evidence will not be weighed and the order of an administrative tribunal must be affirmed if the tribunal has acted within its jurisdiction and there is sufficient competent evidence, as a matter of law, to sustain its findings and order.

*Id.* at 3-4, 277 N.W.2d at 415.

In the present case the principal made two formal evaluations of Eshom, using a form designed to objectively measure a teacher's performance in the classroom. The principal repeatedly testified about Eshom's performance in relation to her fellow teachers at the school, and concluded that although she genuinely tried to improve, she did not, and could not, meet the district's standards. The superintendent concurred with the principal's recommendation. Eshom's evidence does not contravene the evidence that she lacks the necessary skills.

Although reasonable minds might differ with the board's conclusion, the record does contain sufficient evidence as a matter of law to establish just cause to terminate Eshom's contract with the Chester-Hubbell-Byron district by reason of

incompetence.

We therefore must affirm the decision of the district court.

AFFIRMED.