VIOLA MEIER, APPELLEE, V. STATE OF NEBRASKA, DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

417 N.W.2d 771

Filed January 15, 1988.   No. 86-018.

Robert M. Spire, Attorney General, and Royce N. Harper, for appellant.

Daniel W. Ryberg, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

The Nebraska Department of Social Services appeals the judgment of the district court reversing the department's determination that the applicant, Viola Meier, rendered herself ineligible for assistance to the aged because she gave away her real estate and otherwise reduced her assets with the intention and for the purpose of qualifying for public assistance. The department asserts the district court erred in finding that the department's decision was not supported by "competent, material and substantial evidence and was arbitrary and capricious." We affirm, and deny Meier's request for an attorney fee in this court.

Our first task is to settle upon the scope of our review, a matter which is controlled by the nature of the proceeding filed in the district court. It is clear that a decision of the department may be reviewed by the district court either by a proceeding in error pursuant to the provisions of Neb. Rev. Stat. §§ 25-1901 et seq. (Reissue 1985) or by an appeal pursuant to the terms of Neb. Rev. Stat. § 84-917 (Cum. Supp. 1984), a part of what is sometimes informally called the Administrative Procedures Act, Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1981 & Cum. Supp. 1984). *Downer v. Ihms*, 192 Neb. 594, 223 N.W.2d 148 (1974); § 84-917(1); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). In an appeal taken under the act, the district court's review is limited to determining whether an agency's action is (1) in violation of constitutional provisions, (2) in excess of the statutory authority or jurisdiction of the agency, (3) made upon unlawful procedure, (4) affected by other errors

of law, (5) unsupported by competent, material, and substantial evidence in view of the entire record as made on review, or (6) arbitrary or capricious; however, this court reviews the district court's decision de novo on the record made before the agency. *Department of Health v. Lutheran Hosp. & Homes Soc., ante* p. 116, 416 N.W.2d 222 (1987); *Zybach v. State*, 226 Neb. 396, 411 N.W.2d 627 (1987); *Haeffner v. State, supra*; § 84-917(6); § 84-918 (Reissue 1981). A proceeding in error, on the other hand, removes the record from an inferior to a superior tribunal in order that the latter may determine whether the judgment or other final order of the inferior tribunal is in accordance with law. *Hammann v. City of Omaha, ante* p. 285, 417 N.W.2d 323 (1987); *Eshom v. Board of Ed. of Sch. Dist. No. 54*, 219 Neb. 467, 364 N.W.2d 7 (1985); *Dlouhy v. City of Fremont*, 175 Neb. 115, 120 N.W.2d 590 (1963). Thus, in an error proceeding both the district court and this court review an administrative agency's decision to determine whether the agency acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. See, *Nuzum v. Board of Ed. of Sch. Dist. of Arnold, post* p. 387, 417 N.W.2d 779 (1988); *Eshom v. Board of Ed. of Sch. Dist. No. 54, supra*.

While Meier's initial pleading in the district court is entitled "Petition in Error," she borrowed language from § 84-917(6) by alleging that the department's "decision was made upon unlawful procedures, considered evidence not before the parties during the hearing, is unsupported by competent material and substantial evidence in view of the entire record as made on review, and was arbitrary and capricious." The record establishes the department's decision was made on July 2, 1985. Meier filed her petition on July 31, 1985, and thus met the 30-day deadline within which she might appeal the department's decision under the Administrative Procedures Act, § 84-917(2), and the 1 calendar month within which she could then seek a review by a petition in error, § 25-1931. However, in order to obtain a review by proceedings in error, Meier would have had to present to the district court within that same calendar month a duly authenticated transcript containing the department's order. *Moell v. Mennonite*

*Deaconess Home & Hosp.*, 221 Neb. 168, 375 N.W.2d 618 (1985); § 25-1931. Such a transcript was filed with the district court on August 15, 1985, more than 1 calendar month after the department's decision. Therefore, if Meier in fact intended to seek a review by a proceeding in error, she failed to perfect her intention.

On the other hand, § 84-917(4) of the act provides that a certified transcript must be filed within "fifteen days after *service* of the petition or within such further time as the court for good cause shown may allow . . . ." (Emphasis supplied.) The record does not contain the information we need to determine whether Meier met the time requirement of § 84-917(4); however, since the department raised no jurisdictional question in the district court and poses none to this court, we treat the matter as an appeal properly perfected under the provisions of the act. Thus, we review the district court's decision de novo on the record made before the department.

The relevant chronology of events begins with a letter Dr. Ronald Cooper wrote to Meier's family physician on October 4, 1983. Cooper stated therein that Meier

> most likely does suffer from a primary dementia which is most likely of the Alzheimer's type. She certainly does have some evidence of parkinsonian signs at this time, though they are mild and mainly manifest by a resting tremor of the left upper and, to a lesser extent, the right upper extremity. I do not feel that her Parkinson's disease in and of itself is causing her memory difficulties and I would not treat her at the present time in view of the fact that her signs are so minimal. . . . It does not appear that this woman has a treatable cause of her dementia. I have discussed this with both the patient and her daughter. . . .
>
> This is a 72 year old woman brought into the office today by her daughter because of memory difficulties that have been occurring probably for several years, but worse in the recent past. She seems to get somewhat confused and mixed up at times. There are no specific complaints, other than the fact that her eyes itch and burn a lot. The patient truly did not know why she was in the office today

and denied any specific problems other than the eyes. The patient's general health apparently in the past has been excellent. . . . There has been no family history of progressive dementia.

On April 6, 1984, Meier, for a nominal consideration of $1, deeded a one-half interest in the real estate constituting her home to her daughter, Lillian Nelson, and the other half interest to her son and his wife. Another daughter in Texas was to receive a third of the value of the real estate, "about [$]13,000." At the same time, Meier executed a power of attorney, authorizing her son and Nelson to serve as Meier's attorneys in fact.

Meier appears to have functioned well until July 25, 1984, when she collapsed and was hospitalized. The hospitalization continued through August 1, 1984, when Meier was transferred to a nursing home.

The subject application for assistance was presented to the department on August 22, 1984, and initially denied by the department on August 23.

At the administrative hearing resulting in the order from which this appeal arises, Nelson testified, contrary to the statement contained in the Cooper letter, that neither she nor Meier was made aware of the diagnosis which had been made, until after Meier collapsed. A new mattress, box springs, chair, and ottoman were purchased for Meier at a cost of "[$]600 or more" a week before her collapse. After April of 1984, at least $5,000 of Meier's money was spent, including $2,000 which was placed in a burial fund a few days before she was dismissed from the hospital. Nelson further testified the real estate was transferred to her because Meier wanted to be free of the responsibilities of ownership and because she wanted someone to live with her. As Nelson was single, she agreed to move into the house and live in the basement, to which improvements were made, where she lived so she and her mother could each have some privacy. Meier did her own cooking and housekeeping. According to Nelson, no thought was given at that time to requesting or qualifying for public assistance, and no discussion had been had concerning Meier's need for future medical care. Nelson pointed out that, in the past, relatives had

provided for her great-grandmother and grandmother when they needed care, without resort to nursing homes or public assistance. Meier took care of her husband at home when he became ill.

Meier's son also testified that before July of 1984 no thought had been given to applying for "social services," and generally corroborated Nelson's testimony.

Meier's lawyer at the time the power of attorney and deed conveying the real estate were executed wrote that as he recalled the situation, the power of attorney was executed to avoid a conservatorship and the deed to avoid probate. He had no recollection regarding Meier's frame of mind concerning future care and medical costs.

Neb. Rev. Stat. § 68-1002 (Reissue 1986) reads in relevant part: "In order to qualify for assistance to the aged . . . an individual: . . . (3) Has not deprived himself directly or indirectly of any property whatsoever for the purpose of qualifying for assistance to the aged . . . ."

Neb. Admin. Code tit. 469, ch. 2, § 2-009.07B4 (1985) stipulates:

> The transfer of a home is considered gratuitous when the individual does not receive fair market value for the property. . . . The gratuitous transfer of a client's home at any time within two years before his/her moving into a different facility is presumed to be a transfer of a resource to qualify for assistance (see 469 NAC 2-009.10). . . .

Neb. Admin. Code tit. 469, ch. 2, § 2-009.10 (1985) provides:

> An individual is ineligible if s/he deprives himself/herself of resources by giving them away or by disposing of them for less than fair market value for the purpose of qualifying for assistance. . . .
>
> . . . .
>
> The worker may also allow the client to produce evidence that may indicate the resource was disposed of for reasons other than to qualify for assistance (e.g., to repay debts) and, therefore, does not affect eligibility. . . .

While in conducting our de novo review we do not ignore the findings made by the department and the fact that it saw and

heard witnesses who appeared before it, *Department of Health v. Lutheran Hosp. & Homes Soc., ante* p. 116, 416 N.W.2d 222 (1987), we are nonetheless required to make independent findings of act without reference to those made by the department. *Department of Health v. Grand Island Health Care*, 223 Neb. 587, 391 N.W.2d 582 (1986).

The department found that "from January to August, 1984, almost $8,000 was withdrawn from [Meier's] checking and savings accounts . . . ." However, the record does not provide a basis for such a finding. It is true that a caseworker's memorandum to the file recites, "We also noted that in the past seven months, almost $8,000.00 (above monthly income of $337.00) has been withdrawn from the checking and savings accounts." But we are unable to place any reliance upon that document, for the record does not tell us how that determination was made nor what disposition was made of the funds. As noted earlier in this opinion, the record does establish, through Nelson's testimony, that within 3 or 4 months of the application for assistance, $5,000 of the applicant's money was spent. Once again, that proof alone does not support the department's finding, for the record does not tell us the disposition of the funds, except that $2,000 was set aside in a burial fund.

*Zybach v. State*, 226 Neb. 396, 411 N.W.2d 627 (1987), makes clear that under the language of § 68-1002, depriving oneself of resources is not, in and of itself, the disqualifying act; the disqualification results from doing so with the intention and for the purpose of becoming eligible for public assistance. The record does not convince us that the requisite intention existed when the money was spent.

This brings us to the matter of the gratuitous transfer of Meier's real estate, which the department found was done with the intention and for the purpose of qualifying for public assistance. In coming to that conclusion, the department placed heavy reliance upon Cooper's controverted statement that he had discussed with both Meier and Nelson the applicant's untreatable dementia. Whether the conversation took place is not controlling, for the Cooper letter also reveals that although Meier suffered from intermittent confusion and memory loss,

her general health had been excellent, and there was no family history of progressive dementia. Thus, even if Cooper advised Meier and Nelson that Meier suffered from an untreatable dementia, nothing was said which would require Meier to conclude that her condition would soon progress to the point she could no longer care for herself and would need to invade her assets to maintain herself. There had been no family history of progressive dementia to serve as a harbinger of Meier's future. In addition, the family had a history of taking care of its own without outside help. Moreover, the facts that the basement of Meier's former home was modified to provide separate living quarters for Nelson and that expenditures were made to provide for Meier's comfort in her former home strongly suggest that at all relevant times, Meier and her family thought things would continue as in the past.

The regulatory presumption contained in § 2-009.07B4 does not come within the ambit of Neb. Rev. Stat. § 27-301 (Reissue 1985) of the Nebraska Evidence Rules, which provides that, unless within some exception, a presumption imposes upon a party upon whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence. The regulatory presumption is not evidence, and merely establishes the burden of going forward with the evidence. It does no more than take the place of evidence unless and until evidence is adduced to overcome or rebut it. In other words, in the absence of any evidence on the point, § 2-009.07B4 operates to establish that a conveyance of real estate for less than market value made within 2 years before moving into a different facility was made with the intention and for the purpose of qualifying for public assistance. However, once evidence to the contrary is adduced, the presumption disappears. See, *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977); *First Nat. Bank in Kearney v. Bunn*, 195 Neb. 829, 241 N.W.2d 127 (1976). See, also, § 2-009.10, which itself provides for explanatory information. The question then becomes whether the evidence received on the point satisfies an applicant's burden of proving entitlement to public assistance. *Dobrovolny v. Dunning*, 221 Neb. 67, 375 N.W.2d 123 (1985).

We conclude that Meier has met that burden. The evidence

preponderates in favor of a finding that she conveyed her real estate not to become eligible for public assistance but to avoid probate. Accordingly, we affirm the decision of the district court.

Meier asks that we award her an attorney fee under the provisions of Neb. Rev. Stat. § 25-1803 (Reissue 1985), which provides, inter alia, that the court having jurisdiction of "an action for judicial review brought against the state pursuant to sections 84-917 to 84-919 shall award fees and other expenses" to the nonstate prevailing party, unless the court finds "that the position of the state was substantially justified."

The mere fact that the State has not been successful in this court does not mean its position was not "substantially justified." See *Broad Ave. Laundry and Tailoring v. United States*, 693 F.2d 1387 (Fed. Cir. 1982), which interprets a like phrase under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982). The existence of substantial justification depends upon the circumstances of each case. See *Lothspeich v. Sam Fong*, 6 Haw. App. ____, 711 P.2d 1310 (1985), which interprets a like phrase under rule imposing discovery sanctions. Such justification exists where the position has a reasonable basis both in law and in fact. See *Timms v. United States*, 742 F.2d 489 (9th Cir. 1984), which also interprets a like phrase under the Equal Access to Justice Act.

While we have concluded that the evidence preponderates in favor of Meier, we cannot say there is little or no evidence in support of the State's position and, thus, that there exists no reasonable factual basis therefor. See *Hornal v. Schweiker*, 551 F. Supp. 612 (M.D. Tenn. 1982), which interprets the Equal Access to Justice Act. Since the matter of Meier's disqualification under § 68-1002 depends upon an evaluation of the evidence, neither can we say there was no reasonable basis in law for the State's position. Accordingly, we deny Meier's request for an attorney fee.

AFFIRMED.

CAPORALE, J., dissenting.

I agree with the majority's legal analyses in every respect; however, I evaluate the evidence differently and must therefore respectfully dissent.

While I agree that the record is far too sketchy to conclude that $8,000 of the applicant Viola Meier's money disappeared in the 7 months preceding the application, there is no doubt that $3,000 is unaccounted for. Inasmuch as Meier has the burden of proving her entitlement to assistance, *Dobrovolny v. Dunning*, 221 Neb. 67, 375 N.W.2d 123 (1985), it was incumbent upon her to explain what she had done with that money; she did not.

Because the Department of Social Services is itself a party to this proceeding, I do not place much reliance on the fact that it chose not to believe Lillian Nelson's denial of Dr. Ronald Cooper's statement that he told Meier and Nelson that Meier suffered from an incurable dementia. I do, however, place great credence in that statement. Cooper had no interest in the outcome and had no reason to intentionally say he did something he did not in fact do. Moreover, Meier did not call him to testify that he was or might be mistaken in that regard. One would expect that if Cooper would have so testified, he would have been called as a witness. *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981).

If the true purpose of conveying the real estate were to avoid probate, why was it not placed in trust for the use and benefit of Meier during her life with the power of sale in the event she required funds for her care, the remainder, if any, to be distributed to her children upon her death? If there in fact were no concern for Meier's future condition, why was it thought that a conservatorship might be needed?

Irrespective of the past history of caring for relatives, the evidence convinces me that in this instance the applicant deprived herself of assets with the intention and for the purpose of qualifying for public assistance, to thereby enrich her children at the expense of the taxpayers.

Coming to that conclusion does not mean, however, that the decision of the department was entirely correct. Neb. Admin. Code tit. 469, ch. 2, § 2-009.10 (1985) provides in part:

> The worker determines the period of ineligibility based upon the period of time the countable value of the resource disposed of might reasonably be expected to meet the need of the client. The worker may consider the actual need of the client at the time of disposal in determining the

period of ineligibility. The period of ineligibility begins with the date of the resource disposal. In determining the period of ineligibility the worker shall consider any available income.

If the countable value disposed of is $12,000 or less, the period of ineligibility may not exceed 24 months. If the countable value disposed of exceeds $12,000, the period of ineligibility may be longer than 24 months. In either case, the period of ineligibility must bear a reasonable relationship to the amount disposed of and the client's need.

The department should therefore have determined the period of Meier's ineligibility. Accordingly, I would reverse the decision of the district court and direct that the cause be remanded to the department for determination of the period of Meier's ineligibility in accordance with this dissenting opinion. Neb. Rev. Stat. § 84-917(6) (Cum. Supp. 1984).