HERSHEL NUZUM, APPELLEE, V. BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF ARNOLD, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.

417 N.W.2d 779

Filed January 15, 1988. No. 86-053.

Philip M. Martin, Jr., of Paine, Huston, Higgins & Martin, for appellant.

Mark D. McGuire of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

Neal E. Stenberg, for amicus curiae Nebraska Association of School Boards.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Defendant in error, Board of Education of the School District of Arnold, appeals the judgment of the district court reversing the board's decision not to renew its probationary contract of employment with plaintiff in error, Hershel Nuzum. The board's five assignments of error present two issues: (1) whether Nuzum resigned his position and, if not, (2) whether the board's decision was reached in accordance with law. We reverse the judgment of the district court.

The state issued a "Nebraska Teaching Certificate," attesting that Nuzum met the requirements for an "Administrative & Supervisory Certificate" and was prepared to serve as a principal and to teach history and physical education in all districts at grade levels 7 through 12. Nuzum was first hired by the board at the beginning of the 1983-84 school year as a high school principal with some teaching duties.

Nuzum completed his first year of service with no significant complaints from the board or Supt. Robert Reed. Indeed, a

written evaluation form submitted by Reed after the first year of Nuzum's employment rated the latter's performance as outstanding in 3, good in 13, and satisfactory in 4 of the 20 items considered; no item of performance was rated as being marginal or unsatisfactory.

Nonetheless, it became apparent to Reed by at least the beginning of Nuzum's second semester of his second year of employment that Nuzum did not work well with some of the high school teachers on the staff. According to Reed, the problem was the topic of "ongoing evaluation" because Reed wanted Nuzum to "[b]e more firm" and "call those individuals and talk to them," but so far as Reed knew, this had not been done. It was also Reed's judgment that Nuzum did not properly control teacher meetings. However, during the hearing before the board, when asked, "And, during the course of the year, did you discuss the specific things, what you are saying, you know, this a, b, c and d are things that I think are deficient and you should work toward improving those things I guess is what I'm saying —," Reed interrupted and replied, "No, I felt that when teachers should make comments about Mr. Nuzum, Mr. Nuzum should confront those people about the comments, and clarify them. . . . I felt that he should stand up to them."

Nuzum testified that although he received comments and suggestions made by Reed from time to time, he was given little verbal notice concerning any performance deficiencies. Nuzum was unaware there were problems of sufficient severity as to warrant his dismissal until March of 1985 when, after a meeting of the board, Reed told Nuzum that his contract would most likely not be renewed and it would be best if he resigned. Reed then submitted another written evaluation on April 10, 1985, for the 1984-85 school year, in which he states he felt Nuzum took attendance and performed hall duty and class assignments "relatively well," but felt that "[i]n the area of working with teachers" Nuzum "lacks confidence" and "is easily intimidated by certain individuals when they don't agree with him." According to Reed, he had instructed Nuzum to become "more firm in his association with these teachers." Reed then describes Nuzum as "a fine gentlemen [sic]" but opines that if Nuzum "is to become successful as a Principal he needs to build confidence

in himself" and "work hard in building confidence between himself and the faculty he works with."

Nuzum tendered his resignation in a March 15, 1985, letter submitted to Reed. However, on March 27 and again on April 3, Nuzum wrote letters to both Reed and the board in which he withdrew his tendered resignation. The board met on April 8 and adopted a resolution reciting that the resignation Nuzum had tendered became effective when it was received by Reed, that the board had placed an advertisement seeking a replacement for Nuzum, that the resignation was accepted by the board, and that Nuzum's effort to rescind his earlier resignation be denied.

Thereafter, on April 12, 1985, the superintendent wrote a letter advising Nuzum that "if necessary," the board would again consider the nonrenewal of Nuzum's "teaching contract for the ensuing school year." Pursuant to Nuzum's request, the board then conducted a hearing under the provisions of Neb. Rev. Stat. §§ 79-12,107 et seq. (Cum. Supp. 1984).

At that hearing the board's attorney stated that the matter of Nuzum's resignation "would not be even discussed, that we would instead of looking at it as a resignation and [rescission] to go ahead with the hearing, as if the resignation dispute had never taken place." Thus, there is considerable question as to whether the board waived any right it might otherwise have had to rely on Nuzum's letter of resignation. However, because of the analysis which follows, we find it unnecessary to resolve that question.

In determining whether Nuzum effectively resigned, it must be remembered that Neb. Rev. Stat. § 79-1249 (Reissue 1981) reposes in the board, not in a superintendent, the power to contract with teachers and administrators.

It has been said that the tender of a resignation by a teacher, being nothing more than an offer to terminate the contract of employment, may be withdrawn before acceptance. *Cal. Teachers v. Board of Educ. of Paramount*, 163 Cal. App. 3d 808, 209 Cal. Rptr. 655 (1985); *Shade v. Board of Trustees*, 21 Cal. App. 2d 725, 70 P.2d 490 (1937). *Allen v. Lankford*, 170 Ga. App. 605, 317 S.E.2d 645 (1984), held that a resignation tendered by a teacher to her superintendent was subject to

withdrawal until accepted by the board of education with which her contract existed. In *Hart v. School Bd. of Wakulla County*, 340 So. 2d 121 (Fla. App. 1976), a teacher was asked to submit letters of resignation with differing effective dates, but was told that if his performance improved, the letters would be destroyed. The teacher then sought to withdraw the letters before a meeting of the school board, which was scheduled prior to the effective date of either document. The court stated that the teacher's contract was with the school board, not with the superintendent, and, thus, he could withdraw the letters until such time as the board accepted the resignation tendered therein.

We find the foregoing decisions persuasive and conclude that a resignation tendered by a teacher or administrator is subject to being withdrawn until accepted by the board with which the contract of employment exists.

The board argues, however, that it accepted or otherwise relied on Nuzum's letter of resignation to its detriment by placing an advertisement for his replacement. We agree there may be circumstances under which the actions of a board of education taken in reliance upon a tendered resignation may estop a withdrawal of the tender notwithstanding the fact that there was no formal acceptance of the resignation. For example, see *Braught v. Board of Education*, 136 Ill. App. 3d 486, 483 N.E.2d 623 (1985), which prevented withdrawal of a tendered resignation before the school board met because the board had already hired a replacement. However, the case before us does not present such a situation. Not only does the record not tell us whether the advertisement was placed before or after Nuzum withdrew his tendered resignation, but the mere placing of an advertisement is not an action, in and of itself, which precludes the withdrawal of an unaccepted tender of resignation.

Having thus resolved the first issue adversely to the board, we move on to consider the second issue, whether the board reached its decision not to renew Nuzum's contract in accordance with applicable law.

Section 79-12,111 provides in relevant part as follows:

(1) The contract of a probationary certificated

employee shall be deemed renewed and remain in full force and effect unless amended or not renewed in accordance with the provisions of sections 79-12,107 to 79-12,121.

(2) It shall be the purpose of the probationary period to allow the employer an opportunity to evaluate, assess, and assist the employee's professional skills and work performance prior to the employee obtaining permanent status.

All probationary certificated employees employed by Class I, II, III, and VI school districts shall, during each year of probationary employment, be evaluated at least once each semester in accordance with the procedures outlined below:

The probationary employee shall have been observed and evaluation shall have been based upon actual classroom observations for an entire instructional period. Should deficiencies be noted in the work performance of any probationary employee, the evaluator shall provide the teacher or administrator at the time of the observation with a list of deficiencies, a list of suggestions for improvement and assistance in overcoming the deficiencies, and follow up evaluations and assistance when deficiencies remain.

. . . .

(3) In the event that the school board or superintendent or superintendent's designee should determine that it is appropriate to consider whether the contract of a probationary certificated employee or the superintendent should be amended or not renewed for the next school year, such certificated employee shall be given written notice that the school board will consider the amendment or nonrenewal of such certificated employee's contract for the ensuing school year. Upon request of the certificated employee, notice shall be provided which shall contain the written reasons for such proposed amendment or nonrenewal and shall be sufficiently specific so as to provide such employee the opportunity to prepare a response and the reasons set forth in the notice shall be

employment related.

(4) The school board may elect to amend or not renew the contract of a probationary certificated employee for any reason it deems sufficient if such nonrenewal shall not be for constitutionally impermissible reasons and such nonrenewal shall be in accordance with the provisions of sections 79-12,107 to 79-12,121.

By its own terms, the foregoing statute applies to "probationary certificated employees" employed by Class I, II, III, and VI school districts. While we cannot find the class of the school district involved in the record, the board does not claim that the statute is inapplicable because the district is of an exempted class or that the statute suffers from any equal protection or special legislation infirmity, if such it does. Thus, the question is whether Nuzum, as a principal, is within the ambit of the statute.

Section 79-12,107 defines a "certificated" employee as meaning and including all nonsubstitute teachers and administrators, as defined in Neb. Rev. Stat. § 79-101 (Cum. Supp. 1984), who are "employed four-fifths time or more by any class of school district . . . ." No claim is made that Nuzum is employed less than four-fifths of the time. An administrator is defined by § 79-101 as "any certified employee such as superintendent, assistant superintendent, *principal*, assistant principal . . . who does not have as a primary duty the instruction of pupils in the public schools . . . ." (Emphasis supplied.) Section 79-12,107 defines probationary certificated employee as "a teacher or administrator who has served under a contract with the school district for less than three successive school years in any school district . . . ." As noted earlier, Nuzum served the district less than 3 successive school years. Thus, up to this point, the language of § 79-12,111 brings Nuzum within its purview.

However, a difficulty is presented by the requirement that each semester the probationary employee "shall have been observed and evaluation shall have been based upon actual classroom observations for an entire instructional period." While it is true that Nuzum did some teaching, instruction was not his primary responsibility, and the claimed inadequacy of

performance relates not to his instructional abilities but, rather, to his ability to function as a principal. Therefore, we are in effect concerned with determining whether a nonteaching principal comes within the provisions of § 79-12,111.

It is suggested that the statute does not apply to a principal because, as an administrator, a principal cannot be observed for an entire instructional period, and, thus, no evaluation can be based upon such observations. The suggestion is disingenuous, for it overlooks our duty to determine the legislative intent from the statute as a whole, in light of its objectives and purposes. *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985); *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985). It is clear from § 79-12,111 as a whole, without the need to resort to other sources, that its purpose is to compel school system managers to engage in a specified process of evaluating all probationary certified employees, identify such skill and performance areas in which the employee needs to improve, provide suggestions for and assistance in making those improvements, and eliminate from the system those who cannot become competent. There is nothing in § 79-12,111 which exempts probationary principals from that process. In point of fact, the language of the statute specifies the evaluation provide "the . . . *administrator* at the time of the observation with a list of deficiencies, a list of suggestions for improvement and assistance in overcoming the deficiencies, and follow up evaluations and assistance when deficiencies remain." (Emphasis supplied.) Thus, the import of the language requiring classroom evaluation for an entire instructional period is only to assure that a probationary *teacher* not be evaluated on the basis of observations conducted during a unit of time less than a full instructional period per semester. Consequently, our inquiry becomes a matter of determining whether the board, through its superintendent, carried out the duties imposed upon it by the provisions of § 79-12,111.

As this is a proceeding in error, the task of the district court was, as is ours, to determine whether the board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. *Meier v. State, ante* p. 376, 417 N.W.2d 771 (1988); *Eshom v. Board of Ed. of Sch. Dist.*

*No. 54*, 219 Neb. 467, 364 N.W.2d 7 (1985). Section 79-12,111 and the statutes referred to therein confer upon the board the power to elect not to renew a probationary certified employee's contract. Thus, the board acted within its jurisdiction. The only question remaining to be decided, therefore, is whether the evidence is sufficient as a matter of law to support its decision. The evidence is sufficient as a matter of law if the board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Eshom v. Board of Ed. of Sch. Dist. No. 54, supra.*

It is clear that Reed provided Nuzum with but two written evaluations, the last of which was not written until after Nuzum had been asked to resign. Although writing certainly facilitates proof, § 79-12,111 does not require that the evaluations be written. What is required is that there be an evaluation at least once each semester. Reed's testimony that there were ongoing evaluations is sufficient to meet that statutory requirement, at least where, as is the situation in the present case, there is no claim that they were less frequent than that. Neither does § 79-12,111 require that the list of deficiencies be in writing. Reed's testimony that the problem was the subject of ongoing evaluations satisfies as well the requirement that Nuzum be made aware of his deficiencies. The statement in Reed's April evaluation that he told Nuzum he needed to become firmer in his associations with his teachers satisfies the request that assistance be given in overcoming the deficiency. Nuzum does not deny that he was told of the problem or deficiency or that he was told he needed to become firmer; he merely explains he did not understand the problem was severe enough to warrant his dismissal. Section 79-12,111 does not require that a probationary certified employee be told specifically that if the deficiency complained of is not removed, dismissal will follow. Perhaps Reed was not himself as firm as others would be or as might be desirable, but one sufficiently educated to hold a teaching certificate, such as Nuzum, should reasonably expect that the failure to remove a deficiency will result in the termination of employment; that, after all, is the very purpose of probationary employment.

The evidence is sufficient to establish that, through its

superintendent, the board met the conditions imposed by § 79-12,111 upon its right to refuse to renew Nuzum's contract. Accordingly, the judgment of the district court must be reversed.

REVERSED.

WHITE, J., dissenting.

I agree with the majority that a nonteaching principal comes within the provisions of Neb. Rev. Stat. § 79-12,111 (Cum. Supp. 1984). However, the majority's conclusion that the observation language applies only to teachers and not to administrators, I believe, contravenes the legislative intent behind § 79-12,111 to provide for a systematic evaluation procedure. The majority's interpretation suggests that there are no guidelines whatsoever for the method by which administrators are to be evaluated. In this case the "ongoing evaluations" were held to be sufficient, and yet there was no indication in the record as to the time, place, and manner in which these evaluations took place or whether Nuzum was even aware that he was being evaluated. At the very least, administrators should be evaluated for a period of time equivalent to an instructional period and the administrator should be aware, as are teachers, that the observation is taking place. The list of deficiencies and suggestions for improvement should be a direct result of this observational period so that if there is a deficiency the administrator is aware that failure to correct it could warrant dismissal. For these reasons I respectfully dissent.

GRANT, J., dissenting.

I join in the dissent of Judge White. I write to add that I believe that, pursuant to Neb. Rev. Stat. § 79-12,111(2) (Cum. Supp. 1984), a written "list of deficiencies" and of "suggestions for improvement" must be furnished to the probationary administrator. Appellant began to comply with that sort of a requirement. The record shows that a printed form, headed "Principal Evaluation," listing 20 categories and providing for 5 rating standards (from "outstanding" to "unsatisfactory" in each category), was filled out by the superintendent and given to appellee after the 1983-84 school term. The form was not used again. The next "evaluation" was the superintendent's

letter dated April 10, 1985, in four general, short paragraphs, including one paragraph, "It is also Mr. Nuzum's responsibility to work in the curriculum area. It is felt by the teachers that he hasn't done this." What the teachers feel does not constitute an evaluation by the superintendent.

Even if a "list" need not be written, I believe any probationary employee is, under the statute, entitled to "assistance in overcoming the deficiencies" noted. No assistance was given or offered to appellee by the superintendent or the board.

In my judgment, the record does not show that appellant complied with the requirements of § 79-12,111(2). I would affirm.