263 N.W.2d 461 (1978)
200 Neb. 282
Sharon L. SANDERS, Appellee,
v.
The BOARD OF EDUCATION OF the SOUTH SIOUX CITY COMMUNITY SCHOOL DISTRICT NO. 11 IN the CITY OF SOUTH SIOUX CITY, IN the COUNTY OF DAKOTA, in the State of Nebraska, a political subdivision of the State of Nebraska, Appellant.
No. 41266.
Supreme Court of Nebraska.
March 15, 1978.
*462 Smith, Smith & Boyd, South Sioux City, for appellant.
Mohummed Sadden, South Sioux City, Phillip S. Dandos, Sioux City, Iowa, for appellee.
Heard before WHITE, C. J., and SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.
McCOWN, Justice.
This is an error proceeding to challenge the action of the defendant, Board of Education of South Sioux City, Nebraska, terminating plaintiff's teaching contract. The District Court found that the action of the defendant board was arbitrary and unreasonable, and that no just cause for termination existed. The District Court set aside the termination and ordered defendant to reinstate the teaching contract of the plaintiff.
The plaintiff, Sharon L. Sanders, after 3 years of teaching physical education in Colorado schools, was employed by the defendant school board commencing with the school year of 1969-70. She taught girls physical education in the junior high school for 3 years. She was transferred to the senior high school for the 1972-73 school year. She taught girls physical education and was director of the girls drill team.
On February 6, 1975, Mrs. Sanders' performance for the 1974-75 year was evaluated by the principal of the senior high school, James Deignan. His overall evaluation was "good" and he recommended that she receive regular salary advancement but no merit increase for the next year. On the instructor evaluation form, Principal Deignan rated Mrs. Sanders "good" or "excellent" on all 12 rating classifications for personal traits. Mrs. Sanders was rated "good" or "excellent" in 15 out of 18 rating categories for instructional methods, and was evaluated as "needs to improve" in 3 areas. These three were "care and appearance of room and equipment"; "definition of goals"; and "all pupil participation." In no area was she rated as nonacceptable.
On February 24, 1975, the school board voted to continue Mrs. Sanders' employment for the 1975-76 school year, but placed her on probationary status. The record does not reflect the significance of that status, but it has no statutory basis. The record reflects that Mrs. Sanders requested, and apparently received, a hearing on the matter, but no record of the hearing was made. There is nothing in the record to reflect the grounds for the "probation" other than the evaluation report of Mr. Deignan. The "comments or suggestions to the instructor" section of that report stated that better organization and discipline were needed. Whatever the reason for the "probation," no suggestions or guidelines for improvement were given to Mrs. Sanders.
On March 22, 1976, Dennis Trump, the high school principal for the year, who had been assistant principal the preceding year, completed his evaluation report on Mrs. Sanders' performance for the 1975-76 school year. Mr. Trump gave Mrs. Sanders an overall rating of "good" and recommended renewal of her contract. His report stated that "improvement has been shown in cooperation and percentage of student participation." Mr. Trump rated Mrs. Sanders "good" or "excellent" in all rating categories except two in which he rated her as "needs to improve." Those two were "classroom control" and "all pupil participation." In the "comments or suggestions to the instructor" section of the report Mr. Trump noted "some time wasted prior to start of class activity. Improvement has been made in number of students participating."
On the same day Mr. Trump's report was made the defendant school board voted to consider terminating the plaintiff's contract at the end of the 1975-76 school year on the ground of "incompetency, neglect of duty, inability to control students, and poor preservation of class equipment." Mrs. Sanders *463 requested a hearing, which was held on May 5, 1976.
The school board presented three witnesses at the hearing. Dr. Ralph Weaver, the Superintendent of Schools, testified that he did not visit individual teacher's classrooms, nor perform any classroom evaluations, and that the responsibility for the evaluation of individual classroom teachers rested with the various principals. He himself dealt with the principals and reports and recommendations from them. He testified, however, that on several occasions Mrs. Sanders was not present when the drill team was practicing, performing, or working out, and that he considered that a neglect of duty.
Mr. Dennis Trump, the principal of the senior high school for the 1975-76 school year, testified that he was primarily responsible for evaluating teachers and visits each classroom at least three times a year. He knew that Mrs. Sanders was on probation, but had not seen her evaluation report from the preceding year. He testified that on several occasions during the 1975-76 school year, students who should have been in Mrs. Sanders' classes, were, instead, outside the gymnasium classroom and in other places in and around the high school building. He also testified that on occasion Mrs. Sanders had not properly supervised or guarded gymnastics equipment for the safety of students, but acknowledged that he had not called the matter to her attention. Mr. Trump testified that on one occasion during Mrs. Sanders' maternity leave a substitute teacher, in his opinion, had done a better job than Mrs. Sanders. Mr. Trump noted also that on one occasion a drill team class taught by Mrs. Sanders was late in getting started, and that on occasion he had picked up volleyballs in the gymnasium which had not been put away after her classes. Mr. Trump was, nevertheless, of the opinion that Mrs. Sanders' performance had improved, and he recommended that she be retained.
The final witness for the school board was Fred Colvard, the assistant principal of the senior high school. Colvard was in charge of discipline at the high school. He testified that several times he had had to discipline Mrs. Sanders' students for being out of class, and that on occasion Mrs. Sanders had requested his assistance with discipline problems. He testified that on one or two occasions he had seen students working on gymnastics equipment without proper guarding, but had not called it to Mrs. Sanders' attention. Essentially, his testimony as to Mrs. Sanders' conduct agreed with that of Mr. Trump, although Colvard testified that he had not made, or been called upon to make, an evaluation of Mrs. Sanders' teaching performance. He testified that on the basis of his informal observations he was not in a position to say whether she should be retained or terminated.
There were two witnesses for plaintiff. A former student of Mrs. Sanders, who had been in her physical education classes for several years in both junior and senior high school, testified that she had never noticed any discipline problems in class, nor any problems of an insufficient number of students guarding gymnastics equipment, and that Mrs. Sanders was better than the other physical education teachers she had had. She also testified that there were a few students who skipped class on occasion, but that they were people who routinely skipped other classes as well.
Mrs. Sanders herself testified that until the 1974-75 school year she had never had complaints about her teaching. She testified that in the spring of 1975, when she was placed on probation, she was given no specific instructions, suggestions, or guidelines to follow to correct whatever deficiencies there might have been in her teaching. She also testified that her probation was not discussed with her during the 1975-76 school year except in February of 1976, when Mr. Trump indicated to her that he was going to recommend that she be taken off probation. It was her testimony that she did not have an unusual number of discipline problems and that those she had she either handled herself or referred to Mr. Colvard. Mrs. Sanders testified that on one occasion less than four student guards had *464 been in place around the trampoline, and that she immediately corrected the situation when she noticed it. She denied any problem in losing students from her classroom, and explained that if students did not come down to the gymnasium level from the locker room, she had no way of knowing they were present, and she counted them absent. She also testified that all equipment she started the year with was accounted for, although she conceded that on occasion volleyballs would be stuck under the bleachers and she did not find them until later. She also testified that she had never received any complaints from parents about her performance.
At the conclusion of the hearing before the school board on May 5, 1976, the five members of the school board present unanimously voted to terminate Mrs. Sanders' contract.
This error proceeding was thereupon filed in the District Court. The District Court found that there was not substantial evidence sufficient to establish just cause for the termination of plaintiff's teaching contract, and that the termination was arbitrary and unreasonable. The District Court set aside the termination and directed the school board to reinstate plaintiff's teaching contract. The school board has appealed.
This case is one of first impression in interpreting some of the provisions of section 79-1254, R.R.S.1943, which became effective February 26, 1975. That section deals with the continuation or termination of teachers' contracts and provides in relevant part: "Except for the first two years of employment * * * any contract of employment between an administrator or a teacher who holds a certificate which is valid for a term of more than one year and a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract for just cause at the close of the contract period. The first two years of the contract shall be a probationary period during which it may be terminated without just cause. * * * The secretary of the board shall, not later than April 15, notify each administrator or teacher in writing of any conditions of unsatisfactory performance * * * which the board considers may be just cause to either terminate or amend the contract for the ensuing school year. Any teacher or administrator so notified shall have the right to file within five days of receipt of such notice a written request with the board of education for a hearing before the board. Upon receipt of such request the board shall order the hearing to be held within ten days, and shall give written notice of the time and place of the hearing to the teacher or administrator. At the hearing evidence shall be presented in support of the reasons given for considering termination or amendment of the contract, and the teacher or administrator shall be permitted to produce evidence relating thereto. The board shall render the decision to amend or terminate a contract based on the evidence produced at the hearing. As used in this section * * * the term just cause shall mean incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, other conduct which interferes substantially with the continued performance of duties * * *."
The parties have stipulated that only incompetency and neglect of duty are involved here, and none of the other statutory meanings of "just cause" are applicable. It should be noted also that the statute specifically requires that any decision to terminate a teacher's contract must be based only on the evidence produced at the hearing before the school board.
An error proceeding has for its purpose the removal of the record from an inferior to a superior tribunal to determine if the judgment or final order entered is in accordance with law. Dovel v. School Dist. No. 23, 166 Neb. 548, 90 N.W.2d 58. The District Court and this court, on appeal, must determine if the evidence presented at the hearing before the school board on May 5, 1976, is sufficient, as a matter of law, to support the determination of the school board.
*465 The critical issue here is what conduct is sufficient to constitute just cause for the termination of the contract of a tenured teacher under current statutory requirements. There are few, if any, objective criteria for evaluating teacher performance or for determining what constitutes just cause for terminating teaching contracts of tenured teachers. Each case must, therefore, be assessed on its own facts. In this case there is no evidence that Mrs. Sanders violated any directive, regulation, rule, or order given to her by any administrator or the board of education. There is no evidence that the conduct of Mrs. Sanders complained of by the board violated any specific rule or regulation of the school administration. In both of the detailed evaluations of Mrs. Sanders' performance, made by the person charged with that duty by the school administration, there were no areas of performance in which she was not acceptable, and out of almost 20 rating categories, only 2 or 3 were rated as needing improvement. Both of those official evaluations by the administration itself recommended retention. Both were made by professional administrators who presumably had ample knowledge of professional competence and the standards for performance of duty. The evidence at the hearing reflected facts which were thoroughly known by the principal at the time he made his evaluation and report.
At a hearing before a board of education to terminate the contract of a tenured teacher under section 79-1254, R.R.S. 1943, the evidence at the hearing must be sufficient to establish just cause for termination. Under section 79-1254, R.R.S.1943, the term "just cause" means incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, or other conduct which interferes substantially with the continued performance of duties.
Evidence that a particular duty was not competently performed on certain occasions, or evidence of an occasional neglect of some duty of performance, in itself, does not ordinarily establish incompetency or neglect of duty sufficient to constitute just cause for termination. Incompetency or neglect of duty are not measured in a vacuum nor against a standard of perfection, but, instead, must be measured against the standard required of others performing the same or similar duties. The conduct of Mrs. Sanders complained of by the board might well be categorized as minimal rather than substantial evidence of incompetence or neglect of duty. However her performance of duty is classified, there is a complete absence of evidence that Mrs. Sanders' performance of her particular duties was below the standard of performance required of other teachers in the high school performing the same or similar duties. Neither is there any expert testimony that Mrs. Sanders' conduct was, or should be, sufficient evidence of incompetency or neglect of duty to constitute just cause for termination of her contract.
The District Court was correct in finding that there was no substantial evidence of incompetency or neglect of duty sufficient to establish just cause for the termination of plaintiff's contract. In the absence of just cause the defendant's action was arbitrary and unreasonable.
The judgment of the District Court was correct and is affirmed.
AFFIRMED.