SHARON KAY SCHULZ, APPELLANT, V.
BOARD OF EDUCATION OF THE
SCHOOL DISTRICT OF FREMONT, APPELLEE.

315 N.W.2d 633

Filed February 5, 1982. No. 43722.

Mark D. McGuire of Crosby, Guenzel, Davis, Kessner & Kuester for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman & Thomsen for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

This is an error proceeding contesting the action of the appellee, Board of Education of the School District of Fremont, Nebraska (School Board), terminating the teaching contract of appellant, Sharon Kay Schulz (Mrs. Schulz). The District Court for Dodge County, Nebraska, affirmed the School Board's termination of Mrs. Schulz' teaching contract, and Mrs. Schulz has now appealed to this court. We find that the evidence

presented at the hearing before the School Board on May 8, 1980, was insufficient as a matter of law to support the determination of the School Board, and accordingly we reverse and remand.

Mrs. Schulz was employed by the School Board initially in 1960 and she taught for 1 year. Thereafter, in 1968 she was rehired by the School Board and continuously taught in the Fremont school district from 1968 until 1980, when her contract was terminated. From 1968 through 1979 she taught the fifth and sixth grades at Clarmar School. For the 1979-80 school year she taught the entire fourth grade and fifth grade mathematics at North Side Elementary School.

On April 15, 1980, Mrs. Schulz was notified in writing by the School Board that it had voted to consider terminating her contract effective at the end of the 1979-80 school year. This notice was required pursuant to Neb. Rev. Stat. § 79-1254 (Reissue 1976) because Mrs. Schulz was a tenured teacher.

The notice stated that "[t]he reason for this action is the alleged violation of the competency standards of the Nebraska Professional Practices Commission relating to instructional procedures, communication skills, management techniques, evaluation of learning and goal achievement, and human and interpersonal relationships." None of the above alleged violations, in themselves, are grounds for terminating the contract of a tenured teacher unless they constitute "just cause" within the meaning of § 79-1254. "Just cause" is specifically defined in the act to mean "incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, other conduct which interferes substantially with the continued performance of duties . . . ." It appears clear from the evidence produced by the School Board that it was relying exclusively on the alleged "incompetency" of Mrs. Schulz to constitute "just cause." We believe that the evidence presented does not support the School Board's finding that Mrs. Schulz was incompetent so as

to constitute just cause for terminating her teaching contract.

The evidence adduced at the hearing consisted of three employees of the School Board plus a number of parents, as well as certain documentary evidence. The first witness was Dr. Robert E. Melick, superintendent of the Fremont schools. Although Dr. Melick recommended that Mrs. Schulz' contract be terminated, he conceded that he had not made any personal evaluation of Mrs. Schulz. He knew who Mrs. Schulz was and had observed her in the classroom for about 10 minutes each year during the time he was superintendent, as he observed all the teachers working for the Fremont district. Dr. Melick testified that his conclusion regarding Mrs. Schulz' competency was based upon the fact that she had not satisfied the standards of competent professional performance adopted by the Professional Practices Commission pursuant to Neb. Rev. Stat. § 79-1282 (Reissue 1976). These standards are standards adopted by the Professional Practices Commission for carrying out its statutory function and not specially designed for use by a school district. In fact, the standards provide in part: "No finding of professional incompetency shall be made except where (a) a preponderance of evidence exists of such incompetency, and (b) at least two professional reviewers have reviewed the professional performance for a period of at least three days each." By its own standards, a professional reviewer is defined as one "appointed by the Commission by virtue of the successful completion of special training under the auspices of the Commission . . . ."

As a result of such an investigation, the State Board of Education may, after hearing, suspend or revoke a teacher's certificate. Neb. Rev. Stat. § 79-1283 (Reissue 1976).

It was clear that neither requirement of the professional standards noted above had been satisfied. Dr. Melick further testified that the standards had never

been adopted by the Fremont School Board but had simply become a set of rules which has been applied by the Fremont school system through the administration in 1978, long after Mrs. Schulz had obtained her tenure. Dr. Melick maintained that the standards were incorporated into the faculty handbook first published in 1978, although no such handbook was offered in evidence.

On direct examination Dr. Melick testified as to the various provisions of the standards of competent professional performance he believed that Mrs. Schulz violated, although his conclusions were based upon information provided principally by others and from letters he had received from parents. On cross-examination Dr. Melick testified that he had never had an occasion to evaluate Mrs. Schulz' performance and was basing his recommendation mainly on recommendations from Miss Marion Iversen, elementary supervisor. Dr. Melick further testified that, while he had stated that Mrs. Schulz had violated certain provisions of the standards of competent professional performance, he had not observed any specific violations of these procedures.

The second witness to testify was Miss Marion Iversen, the elementary supervisor. She too testified that in her opinion Mrs. Schulz' contract should be terminated. On cross-examination, however, she acknowledged that she had not read the latest report concerning Mrs. Schulz, prepared by her most recent principal, Mr. Charles Bechtel. She further testified that she could not make a classroom evaluation of Mrs. Schulz because she had not spent enough time in Mrs. Schulz' classroom.

Certain of Mrs. Schulz' performance evaluation records from at least 1974 through April of 1980 were also offered in evidence. In every instance they indicated average or above average or superior performance in almost every category. The reports do indicate, from time to time, that Mrs. Schulz was

apparently failing to receive complete approval from some of her students' parents. The complete record made before the School Board paints a picture of a teacher who is serious and devoted to her teaching, though, because of perhaps an introverted personality, she does not smile as much as she might. The various observation visitation forms and evaluation reports filled out by school officials for the period between 1968 and 1980 contain comments concerning Mrs. Schulz' personality. Typical of the comments may be the one noted in February 1969, which read: "Cold and distant manner with pupils and associates," or January 22, 1970, which read: "Too distant and hard to get acquainted with." Yet, during all of this time her administrative appraisal of teaching service forms were marked "outstanding" or "above average." The summary of appraisal form dated April 12, 1978, discloses 27 categories that are marked either above average or outstanding, and her appraisal dated April 11, 1980, while indicating 2 of the 27 categories "need improvement," still concluded: "On an overall basis, this teacher is rated as: Above Average."

The third witness was the principal of North Side Elementary School, Mr. Charles Bechtel. Mr. Bechtel was the principal of the school in which Mrs. Schulz had taught during the last year. He indicated that he had observed Mrs. Schulz and noted that her weaknesses were that she might tend to overexpect and that she was a quiet, serious, and strict type of teacher without a great deal of personal interaction. His evaluation, based on only the current year's performance, was that Mrs. Schulz was a satisfactory teacher, and he recommended that her contract be renewed.

The balance of the witnesses were parents, some of whom did not have children in Mrs. Schulz' class. While about half of the parents testifying objected to Mrs. Schulz' methods of teaching, an equal number appeared and praised her abilities.

One of the major complaints raised by the objecting

parents had to do with the amount of homework they perceived their children were required to do each evening. No evidence as to the actual amount of homework was made a part of the record. On further examination, however, it became clear that most of the allegedly excessive homework consisted of work assigned to certain students during the classroom day which the students failed to complete and which Mrs. Schulz insisted they take home and finish. Many of the students apparently completed their work during the class day and did not have a great deal of homework. The evidence further disclosed that the children of several of the objecting parents simply failed to return the homework to class after taking the work home and continued to have incomplete records, which affected their grades. Testimony was adduced that the fifth grade boys agreed to conduct a "mathematics strike" in which they all agreed not to turn in their mathematics homework. This likewise contributed to some of the incomplete work. In one instance, Mrs. Schulz sent home a note with one of the children of an objecting parent. The record reflects that the child forged the parent's signature to the note, as he did with a second note, and it was only when he misspelled his parent's name that Mrs. Schulz resorted to contacting the parent by phone.

Several parents testified that their children became ill or suffered from nerves. They believed that Mrs. Schulz was the cause. None of the claims were supported by any medical testimony and at best were unsupported conclusions of the testifying parents. A reading of the record leads the court to believe that certain of the parents determined that Mrs. Schulz had to be discharged and they would accept nothing else.

While it is not the function nor the desire of courts to second-guess school boards, nevertheless, it is clear that our Legislature has intended to grant to tenured teachers some protection from either disgruntled parents or angry school boards. Section 79-1254 spe-

cifically provides that a tenured teacher may not be terminated absent "just cause." Just cause is defined in the act as "incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, other conduct which interferes substantially with the continued performance of duties . . . ." The intention of the Legislature in this regard is clear. Prior to 1975 a teacher could be discharged for any reason. See *Schultz v. School Dist. of Dorchester*, 192 Neb. 492, 222 N.W.2d 578 (1974). As a result of our decision in the *Dorchester* case, § 79-1254 was amended to specifically require a finding of just cause as defined in the act before a tenured teacher could be discharged. Therefore, before a tenured teacher may. now be terminated, the school board must meet its burden of establishing, as a matter of law, the existence of just cause which, as defined by the statute, is more than dissatisfaction by school board members or parents.

In *Sanders v. Board of Education*, 200 Neb. 282, 289-90, 263 N.W.2d 461, 465 (1978), we said: "The critical issue here is what conduct is sufficient to constitute just cause for the termination of the contract of a tenured teacher under current statutory requirements. There are few, if any, objective criteria for evaluating teacher performance or for determining what constitutes just cause for terminating teaching contracts of tenured teachers. Each case must, therefore, be assessed on its own facts. . . .

. . . .

". . . Incompetency or neglect of duty are not measured in a vacuum nor against a standard of perfection, but, instead, must be measured against the standard required of others performing the same or similar duties."

After reviewing the facts in *Sanders*, we concluded that the terminating of Mrs. Sanders was not supported by the evidence and affirmed the trial court which had ordered her reinstated. In view of the fact that Mrs. Schulz continued to receive above average ratings

during the entire time she taught and the record is silent as to the performance of any other teachers in the Fremont school system, we are at a loss to see how Mrs. Schulz could be found to be incompetent.

To the same effect, we made similar observations in *Hollingsworth v. Board of Education*, 208 Neb. 350, 303 N.W.2d 506 (1981), where, again, we reversed the action of the school board and ordered the teacher reinstated.

The facts in both *Sanders* and *Hollingsworth* are not dissimilar to the facts in the instant case. There is little doubt that Mrs. Schulz might do herself a favor by being less rigid. As Mr. Bechtel testified, Mrs. Schulz is "an old-fashioned teacher." Perhaps such teachers do not win popularity contests, but neither can they be said to be incompetent. Teachers are not required to entertain their students, only to teach them.

The trial court, in affirming the action of the School Board, specifically found that evidence was presented that Mrs. Schulz had not met various minimum standards of competency, more particularly set out in the order. These appear to be a paraphrase of the standards promulgated by the Professional Practices Commission. We are unable to find any evidence in the record to support that conclusion. We must therefore reverse the action of the trial court and remand with directions that the School Board's action be vacated and Mrs. Schulz restored to her status as a tenured teacher with full compensation from the date of her termination.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissents.