LYLE STEPHENS, APPELLANT, V. BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 5, PIERCE COUNTY, NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

429 N.W.2d 722

Filed September 30, 1988.   No. 87-309.

P.D. Furlong for appellant.

John M. Gerrard, of Domina, Gerrard, Copple & Stratton, P.C., for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and HOWARD, D.J., and COLWELL, D.J., Retired.

HOWARD, D.J.

Following a hearing, the board of education of School District No. 5 of Pierce County, Nebraska (Plainview), terminated the contract of Lyle Stephens, a certificated teacher at the Plainview public schools, for unprofessional conduct and immorality. The charges substantially arose from an incident between Stephens and a visiting salesman. Stephens appealed the board's termination decision to the district court for Pierce County. The district court dismissed the petition in error and affirmed the termination, and this appeal followed. "Just cause" for termination is defined, among other things, as "unprofessional conduct" and "immorality." Neb. Rev. Stat. § 79-12,107(4)(c) and (e) (Reissue 1987).

We review the record to determine whether there is sufficient evidence as a matter of law to support the board's decision. Evidence is "sufficient as a matter of law" if a judge could not direct a verdict if the case were tried to a jury. It is something less than the weight of the evidence and can be such as to permit the drawing of two inconsistent conclusions. *Eshom v. Board of Ed. of Sch. Dist. No. 54*, 219 Neb. 467, 364 N.W.2d 7 (1985).

Assigned as error are certain alleged violations of procedure leading to and occurring during the hearing, and the finding of the district court that the termination was not arbitrary or capricious.

Gerald Zimmerman, a typewriter salesman from Norfolk, Nebraska, testified that on September 29, 1986, he arrived for a meeting with the high school principal, Gale Retzlaff. Retzlaff was unavailable for approximately 40 minutes, and Stephens invited Zimmerman into the teacher's lounge for a cup of coffee. Initially, an unidentified teacher was in the lounge also,

but, eventually, Stephens and Zimmerman were left alone. The two men discussed a variety of subjects for about half an hour. This conversation included several out-of-context remarks by Stephens which were sexually oriented. During these periods of the conversation, Stephens appeared restless, moving in his chair and "actually rubbing his own genital area."

Toward the end of the conversation, the two men discussed woodworking and Zimmerman's attempt to build his own bar stools. Zimmerman stated he was having difficulty routing the seat area, but neither party arrived at any solution to the problem, other than freehand power sanding. Zimmerman stood up and walked toward the door of the lounge, making a parting comment about letting him know any suggestions Stephens might come up with on the bar stools. At the same time, Stephens began to walk toward Zimmerman. Stephens said he really did not have any immediate ideas. At the same time, he was walking toward Zimmerman and closing in for a face-to-face conversation. Stephens suggested that Zimmerman might try using a foam cushion, which might conform to his "ass." While saying this, Stephens placed his hand directly on Zimmerman's genital area, making three or four fondling motions as he ended the conversation.

Del Beaudette, whose wife was a secretary at the Plainview school, described an incident in the men's room of the American Legion Club in Plainview, where he attended a school staff Christmas party on December 15, 1985. According to Beaudette, while Beaudette was washing his hands, Stephens grabbed him in the genitals and on the buttocks after "playing with himself," "flipping his penis."

Stephens denied all misconduct as attributed to him by the witnesses Zimmerman and Beaudette and stated that he had never engaged in such conduct with anyone. Two "rebuttal" witnesses described similar actions by Stephens.

Appellant argues the violation of Neb. Rev. Stat. § 79-12,110(3) (Reissue 1987), requiring that prior to the hearing the notice of possible cancellation of the teacher's contract and the reasons supporting possible cancellation shall be considered confidential employment matters subject to Neb. Rev. Stat. §§ 79-4,156 to 79-4,158 and 84-1410 (Reissue 1987),

and that such matters shall not be released to the public or any news media. The October 22 edition of the Plainview News contained a front-page item relating that the school board was considering termination of Stephens "for reasons authorized by law." Two days previously, on October 20, a special meeting of the Plainview board of education was held to discuss the Stephens matter. The board opened the meeting and then went immediately into closed session to discuss the Stephens situation. Upon returning to open session, the board approved a motion to consider the cancellation of Stephens' teaching contract for reasons authorized by law. A reporter from the Plainview News attended the open session and reported on the meeting in the next issue of the newspaper, as above stated. In the meantime, on October 21, before the publication, Stephens, through his attorney, requested a public hearing in accordance with Neb. Rev. Stat. § 79-12,115 (Reissue 1987).

Leaving aside the questions of whether the board's approval in open session of a motion to consider termination without giving details can be said to have prejudiced Stephens, and whether any violation of the statute vitiates a hearing, we conclude that the board did all that was possible to comply with § 79-12,110(3), which mandates a closed session in accordance with § 84-1410 only for matters preparatory to any formal action. Section 84-1410 itself requires that the meeting be "reconvened in open session before any formal action may be taken." The approval of the motion, necessarily made in open session, cannot be taken as a "release" to the public or the news media in violation of § 79-12,110(3), which itself incorporates a provision of the public meetings law with which it must be read. In refraining from specifics and resolving to consider cancellation "for reasons authorized by law," the board complied as closely with the spirit of the law as with its terms.

Appellant also urges error in the board's reception of testimony from two "rebuttal" witnesses, who were discovered only the day before the hearing. Section 79-12,115(1) requires that, if requested, the names of witnesses to be called against the teacher be furnished at least 5 days before the hearing. We need not decide whether an exception for rebuttal witnesses should be read into the statute or whether under the circumstances the

two were actually rebuttal witnesses, for the reason that without their testimony the evidence is clearly sufficient to support the board's decision. The perpetration of an aggressive or uncontrollable third degree sexual assault in the school premises, with the evident purpose of sexual arousal, is a clear departure from moral behavior and professional standards. While this court has said that for a teacher's conduct to be immoral it must be directly related to a teacher's ability to teach, and indicate an unfitness to do so (*Clarke v. Board of Education*, 215 Neb. 250, 338 N.W.2d 272 (1983)), we agree with the Arizona court in *Welch v. Bd. of Ed. of Chandler U. Sch. Dist.*, 136 Ariz. 552, 555, 667 P.2d 746, 749 (1983), which pointed out:

> There may be conduct which by itself gives rise to reasonable inferences of unfitness to teach or from which an adverse impact on students can reasonably be assumed. Further, we are concerned that by imposing an absolute requirement that specific harm must be proven prior to dismissal, we would deter school administrators from acting to prevent or control predictable future harm.

As stated by the California court in *Morrison v. State Board of Education*, 1 Cal. 3d 214, 229, 461 P.2d 375, 386, 82 Cal. Rptr. 175, 186 (1969), "[T]he board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers . . . ."

The decision of the board is founded upon sufficient competent evidence. The decision of the district court upholding the termination and dismissing the petition in error is correct and must be affirmed.

AFFIRMED.